The STATE of Ohio, Appellee,

v.

HARTMAN, Appellant.

[Cite as *State v. Hartman*, 174 Ohio App.3d 244, 2007-Ohio-6555.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15–07–05.

Decided Dec. 10, 2007.

Timothy Pieper, Van Wert County Law Director, for appellee.

Kelly J. Rauch, for appellant.

ROGERS, Presiding Judge.

{¶ 1} Defendant–Appellant, Philip C. Hartman, appeals the judgment of the Van Wert County Municipal Court convicting him of assault. On appeal, Hartman asserts that the trial judge erred by continuing to participate in the case proceedings after disqualifying himself, that he was denied effective assistance of counsel, and that the trial court erred by failing to sua sponte order a

competency evaluation of him prior to accepting his plea. Based on the following, we reverse the judgment of the trial court.

{¶ 2} On January 8, 2007, Van Wert police officers arrested Hartman, and, contemporaneously, the state filed a complaint against him alleging one count of domestic violence in violation of R.C. 2919.23(A), a misdemeanor of the first degree. The same day, the trial court appointed counsel for Hartman and held an arraignment hearing, where the following statements were made by the trial court judge:

THE COURT: Philip Hartman? Mr. Hartman, you are a[t] Thomas Edison [1] full time; right?

[HARTMAN]: Yeah.

THE COURT: All right. * * * [T]he Court has previously disclosed with Mr. Hartman that my stepdaughter lives just down the road from [him]. In order to avoid any appearance of impropriety, I won't be ~~hearing~~ (trying) this case.[2]
* * *

THE COURT: * * * Is there a representative here from Thomas Edison here [sic] as well?

REPRESENTATIVE OF THOMAS EDISON: Yes.

THE COURT: The Court's going to take a short recess, we will reconvene in about five minutes, to give you an opportunity to exchange some information before I commend [sic] to proceed with scheduling. I will not be hearing this case, but we deem [sic] to work things out in terms of scheduling and procedure regarding bail.
* * *

[CITY LAW DIRECTOR]: * * * I do think that there's to be a scheduled evaluation at St. Rita's, and I believe Philip Hartman is returning home with his father Kip Hartman.
* * *

THE COURT: * * * And the Court's also going to require a release to be signed for information to the Court regarding any evaluation or scheduling, so that release needs to be signed.
* * *

---

1. Thomas Edison is a center for persons with mental retardation and developmental disabilities.

2. We note that the January 2007 hearing transcript states that the judge "won't be hearing this case," however, the judge filed a certificate in April 2007 stating that the transcript was not true and was incomplete. Additionally, the judge amended the transcript by crossing out the word "hearing," handwriting the word "trying" above it, and initialing the change.

THE COURT: So the Court can get the reports of your evaluation, all right?

* * *

THE COURT: All right. The record is clear that the Court will not be, if this case goes to an actual trial, the Court will not hear it, someone else will actually hear the trial, but in terms of scheduling and keeping this matter under control, it's still under my direction.

Thereafter, Hartman entered a plea of not guilty to the count of domestic violence.

{¶ 3} In February 2007, the trial court conducted a change of plea and sentencing hearing. At the hearing, the state requested permission to amend the domestic-violence count of the complaint to one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree, on the basis that there was insufficient evidence to convict Hartman of domestic violence. The trial court accepted the amendment;[3] thereafter, Hartman entered a plea of no contest to the amended complaint, and the following dialogue ensued:

THE COURT: You understand a plea of no contest is not an admission of guilt, but it is an admission of the facts; do you understand that?

[HARTMAN]: Yes.

THE COURT: Do you understand you are giving up your right to trial, and your right to trial by jury; do you understand that?

[HARTMAN]: Yes.

THE COURT: Have there been—Do you understand you are giving up your right to remain silent?

[HARTMAN]: Yes.

THE COURT: Have there been any promises made to you to cause you to enter a no contest plea?

[HARTMAN]: No.

THE COURT: And have you had an adequate time to talk to your attorney?

[HARTMAN]: No.

THE COURT: Do you need to talk to your attorney? Would you like to talk to your attorney some more?

[HARTMAN]: Yeah.

THE COURT: Okay.

[HARTMAN]: Yeah, yeah. What's going on?

---

**3.** We note that the original complaint reading, "This is in violation of section 2919.25(A) of the Ohio Revised Code being Domestic Violence, a misdemeanor of the first degree" was amended to strike through the section number "2919.25(A)" and insert the section number "2903.13(A);" however, the phrase "Domestic Violence" was not crossed out.

THE COURT: Okay. [Hartman's counsel], further representation?

[HARTMAN'S COUNSEL]: Your Honor, to please the Court, I have talked in some length with Mr. Hartman. I feel he does understand the charge. We would enter a no contest plea and waive the possession of the amended documents and the reading thereof, and enter a stipulation of the underlying facts and the finding of guilty, Your Honor.

THE COURT: All right. Based upon the stipulation, therefore, it [sic] finds the defendant guilty.

\* \* \*

THE COURT: Is there any scheduled requirements [sic] regarding his medication or his counseling?

[THE STATE]: [Hartman] is at the Westwood Center. We have [Victim's Assistance], I'm not sure if she can add any insight to that or not, Your Honor.

[VICTIM'S ASSISTANCE]: My understanding and [sic] [Hartman] probably could, the only thing he is doing at Westwood right now is seeing [a doctor] once a month to have his medications monitored.

{¶ 4} Subsequently, the trial court sentenced Hartman to a 30–day jail term and ordered him to pay a $50 fine. The trial court suspended the jail term and imposed one year of probation on Hartman.

{¶ 5} In March 2007, Hartman filed a motion requesting that the trial court vacate his conviction and sentence because there was no determination of his competency to stand trial pursuant to R.C. 2945.371 or a mental-retardation evaluation.

{¶ 6} It is from his February 2007 conviction and sentence that Hartman appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

The trial judge committed error by continuing to participate in the proceedings in this case after disqualifying himself on the record.

### Assignment of Error No. II

Appellant was denied the right to effective assistance of counsel and he was prejudiced as a result.

### Assignment of Error No. III

The trial court committed plain error by failing to sua sponte order a competency evaluation of appellant prior to accepting the no-contest plea.

{¶ 7} Due to the nature of Hartman's assignments of error, we elect to address his second and third assignments of error in reverse order.

## Assignment of Error No. I

{¶ 8} In his first assignment of error, Hartman argues that the trial court judge committed error by continuing to participate in the proceedings in the case after disqualifying himself on the record. Specifically, Hartman contends that the judge stated three times that he would not be hearing the case, that by these statements the judge disqualified himself on the record, that there was no remittal of the disqualification on the record, and that, consequently, the judge erred by being involved in the pretrial negotiations, taking Hartman's no-contest plea, and sentencing him.

{¶ 9} Canon 3(E) of the Code of Judicial Conduct requires that a judge "[d]isqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Additionally, it is axiomatic that a court speaks only through its journal entries, and not through mere oral pronouncements. *State ex. rel. Indus. Comm. v. Day* (1940), 136 Ohio St. 477, 17 O.O. 86, 26 N.E.2d 1014, paragraph one of the syllabus. See also *State v. Hatfield*, 2d Dist. No. 2006 CA 16, 2006-Ohio-7090, 2006 WL 3849074.

{¶ 10} Here, the judge disclosed at the commencement of the arraignment hearing that his stepdaughter lived near Hartman. Additionally, he made three statements regarding his participation in the case: "In order to avoid any appearance of impropriety, I won't be trying this case;" "I will not be hearing this case, but we deem [sic] to work things out in terms of scheduling and procedure regarding bail;" and, "[t]he record is clear that the Court will not be, if this case goes to an actual trial, the Court will not hear it, someone else will actually hear the trial, but in terms of scheduling and keeping this matter under control, it's still under my direction." It is clear from the judge's statements that he was disclosing a possible appearance of impropriety; however, he never formally disqualified himself from the proceedings by journal entry, nor did Hartman's counsel move to disqualify the judge. Therefore, Hartman's contention that the judge disqualified himself is not well taken. Further, the record does not disclose any facts that would lead this court to believe that recusal was necessary.

{¶ 11} Accordingly, we overrule Hartman's first assignment of error.

## Assignment of Error No. III

{¶ 12} In his third assignment of error, Hartman argues that the trial court committed plain error by not ordering a competency evaluation of him prior to accepting his no-contest plea. Specifically, Hartman contends that the trial court had a duty to sua sponte order a competency evaluation because it was disclosed

on the record that he was a full-time charge of Thomas Edison, because it was clear that another person completed the forms in the record on his behalf, because Hartman's signature on all documents in the record was printed and childlike, and because the court had prior knowledge of Hartman, leading him to disclose the conflict on the record.

{¶ 13} " 'Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial.' " *State v. Smith* (2000), 89 Ohio St.3d 323, 329, 731 N.E.2d 645, quoting *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433. In determining whether a criminal defendant is incompetent, the United States Supreme Court has stated that the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. Additionally, "[t]he right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *Berry,* 72 Ohio St.3d at 359, 650 N.E.2d 433.

{¶ 14} A defendant is presumed competent for trial purposes. R.C. 2945.37(G). Additionally, R.C. 2945.37(F) states:

The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. or a voluntary or involuntary mentally retarded resident under Chapter 5123. of the Revised Code or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.

{¶ 15} R.C. 2945.37(B), governing competency hearings, requires a hearing to be held if requested by counsel prior to trial. However, once trial has commenced, the trial court has discretion whether to hold such a hearing and must only do so sua sponte for good cause shown or on the court's own motion. *Smith,* 89 Ohio St.3d at 329, 731 N.E.2d 645; R.C. 2945.37(B); *State v. Rahman* (1986), 23 Ohio St.3d 146, 156, 23 OBR 315, 492 N.E.2d 401.

{¶ 16} In determining whether sua sponte granting of a hearing is merited, the following factors should be considered:

(1) doubts expressed by counsel as to the defendant's competence, (2) evidence of irrational behavior, (3) the defendant's demeanor at trial, and (4) prior medical opinion relating to competence to stand trial.

*State v. Rubenstein* (1987), 40 Ohio App.3d 57, 60–61, 531 N.E.2d 732, citing *Drope v. Missouri* (1975), 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103.

{¶ 17} Here, it was disclosed on the record that Hartman was a full-time charge of a facility for persons with mental retardation and developmental disabilities, that a representative of the facility was present at Hartman's arraignment, that an evaluation of Hartman had been scheduled at a hospital,[4] that Hartman stated "what's going on" during the Crim.R. 11 colloquy, and that Hartman stated that he had not had adequate time to speak to his attorney and requested additional time, which he did not receive.

{¶ 18} Although any of these individual factors alone may not constitute significant indicia of incompetence warranting a competency hearing, when combined, we find that there were sufficient indicia of Hartman's incompetence that the trial court should have sua sponte ordered a competency evaluation. Significantly, Hartman's statements that he wanted more time to speak to his attorney and inquiry as to "what's going on" indicate that he did not understand the proceedings and was not able to reasonably consult with his attorney. His full-time status at a facility for persons with mental retardation and developmental disabilities, and the discussion on the record of his scheduled evaluation and medication monitoring, further indicate that an inquiry should have been made into his competency.

{¶ 19} Accordingly, we sustain Hartman's third assignment of error.

### Assignment of Error No. II

{¶ 20} In his second assignment of error, Hartman asserts that he was denied effective assistance of counsel and was prejudiced as a result. Our disposition of Hartman's third assignment of error renders his second assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

{¶ 21} Having found error prejudicial to the appellant herein, in the particulars assigned and argued in his third assignment of error, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

PRESTON and WILLAMOWSKI, JJ., concur.

---

4. We note that there is no report of any evaluation in the record, nor does the record disclose its nature or extent.